$\checkmark$

INDIANAPOLIS AND St. Louis R. R. Co.

*v.*

JOHN GALBREATH.

NEGLIGENCE IN RAILROADS—*of comparative negligence.* In an action against a railroad company to recover damages alleged to have been sustained by the plaintiff through the carelessness and negligence of defendant's servants and agents in running a train of cars upon their track, it appeared that while, in the night time, the plaintiff was walking on the

---

track in a village, at a place where the same was so used, without objection, by all classes of persons, he was overtaken and struck by an engine without any headlight, running at a high rate of speed, there being no bell rung or whistle sounded to indicate the approach of the train, and the plaintiff hearing or seeing nothing of it until he was struck: *Held,* that the negligence of the plaintiff in walking on the track, if it was negligence, was but slight when compared with the gross and criminal negligence of the defendant in so running a "dark train" at a high rate of speed through the village without signaling its approach.

Appeal from the Circuit Court of Coles county; the Hon. James Steele, Judge, presiding.

Messrs. Wiley & Parker, Mr. B. W. Hanna, and Mr. C. B. Steele, for the appellant.

Mr. O. B. Ficklin, and Mr. James A. Connolly, for the appellee.

Mr. Justice Breese delivered the opinion of the Court:

This was an action on the case, to recover damages alleged to have been sustained by appellee by the carelessness and negligence of appellant's servants and agents in running a train of cars upon their railroad, by means of which appellee was so seriously injured as to render the amputation of both his legs necessary.

That the injury was inflicted by one of the trains of appellant, is undeniable; that appellee was guilty of some degree of negligence, is certain; but the point is, was the negligence of appellant so much in excess of that of appellee as to justify a verdict in his favor?

This depends upon the fact, which train of appellant inflicted the injury.

It appears there were two freight trains running east through Charleston, the scene of the accident, on the night of the 24th of December, 1869—one in charge of Fife, as conductor, and Long, as engine-driver, and known as No. nine;

the other resembled a freight train, having an engine tender, and caboose only, of which Winn was the conductor, and Nicholson engine-driver, this latter passing Charleston an hour or so in advance of No. nine.

It is in evidence that appellee left Nowling's stable, to go towards the railroad, about twenty minutes past ten o'clock of that night, and in about five minutes thereafter, while walking on the track to reach the Parker crossing, on the way to the place north of the railroad where he had hitched his team, he was struck by a locomotive having no head-light and sounding no bell or whistle. He was going east, the same direction the train was proceeding, and of course had his back to the engine. He saw nothing and heard nothing until he was struck by the pilot of the engine, and most miraculously escaped instant death by holding on to an iron rod with which the pilot was provided. His hold on the rod failing, he fell by the side of the track near the rails. About twelve o'clock of the same night, No. nine passed along the road, and according to the statement of the driver, Long, he discovered appellee sixty or seventy feet ahead of the engine, lying lengthwise about the centre of the track, his head to the west, a little south of the centre of the track, his face to the south, and his knees drawn up. He says he had shut off steam before he saw the object, and was going about four miles an hour; he reversed the engine as soon as he could after he saw him. After he did this, he looked out again, and the pilot was shoving the body along ; could see his body, and saw his legs after the forward truck had passed over him and he had rolled out into the ditch. This train had a head-light at the time, and the usual signals were given, and no negligence is perceptible with which to charge it.

That a "dark train," with no head-light, and without giving warning, did pass along this road at a high rate of speed, and over the very spot where the accident occurred, and about the time it occurred, is conclusively established by the testimony of several disinterested witnesses, who, from the

positions they were in, were obliged to see it, and whose course to Ashmore, eight miles east of Charleston, is proved, where it arrived at the proper time, without a head-light.

It is true, the driver of this engine, Nicholson, says he had a head-light all the way from Mattoon to Terre Haute, and so says the conductor, Winn, but that it was not lighted. Appellee testifies, and so do James White, Susan White and Mattie Patterson—and they are fortified by the testimony of William Marsh and Mary Gibbons, for it is undeniable—that the train they saw at Ashmore when they got off the passenger train, which was followed by this "dark train," and in close proximity, was the same "dark train" to which the witnesses named testified. It could be no other. This train had no head-light, and we think the jury were fully justified in coming to the conclusion that this train inflicted the injury.

Upon the point of comparative negligence, for this is raised in the case, admitting appellee was guilty of negligence in walking upon the track, it was but ordinary negligence, the track being used for that purpose, without objection, by all classes of persons. Appellee was, perhaps, somewhat under the influence of the whisky he had drank that day and evening, but it does not appear he was thereby rendered incapable of properly disposing of himself. He states he was walking on the track to reach the Parker crossing, and had not been on it two minutes before he was struck, and that the engine doing the injury had no head-light, and gave no warning of its approach. This was negligence of the grossest kind; it was wilful, criminal negligence, for which the company must be held responsible.

The evidence presents a case peculiarly within the province of a jury to pass upon. It was a fair question for them to decide : Did train No. nine inflict the injury, or was it the "dark train?" If the former, and appellee had placed himself in a state of intoxication upon the track, that train, having a head-light and giving the required warning, would be exonerated

from blame.   The case would be like that of the *Illinois Central Railroad Co.* v. *Hutchinson,* 47 Ill. 408, in which the company was held blameless.   If the latter, the negligence of the company was so gross as to amount to criminality.

Taking all the instructions given by the court for both parties as the charge of the court to the jury upon the law of the whole case, we fail to see anything objectionable in them as a charge, though one instruction, the fourth, seems to omit all reference to the care observed by appellee.   This defect is supplied by the other instructions, as well those given for the plaintiff as for the defendant.

We are satisfied, on the whole evidence, the jury did not err in accepting appellee's theory of the case.   It was their peculiar province to determine, from the evidence, which theory was the most reasonable, if they have been properly instructed as to the law.

Much stress is laid on the circumstance that appellee had been drinking very freely on that night, but when the evidence is closely scanned it will be seen that he was, at no time on that night, intoxicated, or so much under the influence of ardent spirits as to be incapable of self-control.   His condition was fully considered by the jury, and they must have been satisfied he was using due care in using the railroad track, a practice so general, especially where the track is not fenced, as to be unchallenged.   They must have been satisfied, also, that this "dark train" did not display a head-light, or sound a whistle or ring a bell, all which was a duty imposed by law.

It can not be tolerated that these dangerous machines shall be allowed to run at a high rate of speed through towns and settlements at dead of night, giving no warning of their approach and crushing the life out of all living animals in their way.   If appellee was negligent in his use of the railroad, it was what everybody else did, and was so slight when compared with that of appellant, as to have but little significance.

Appellee was peculiarly unfortunate, first, in being stricken by this "dark train" and left in the road, then his limbs crushed by another train, which, so far as we can see, used all the usual precautions to prevent injury to his person. For this, the jury have awarded but slight compensation for the loss of both legs.

We can not disturb this verdict or judgment, and must affirm the same.

*Judgment affirmed.*

Justices McALLISTER and THORNTON, and Chief Justice LAWRENCE, dissent.