JOHN C. KING v. ROBERT E. RUSSELL.

1. It is not improper for the district judge to correct the statement of facts before his approval, when satisfied that any of the evidence has been omitted.

2. The testimony of a notary touching the acknowledgment of a deed before him, to which he had omitted to affix his notarial seal, is competent to prove the execution of the deed, but not to affect the validity of its record as notice from such record to other parties.

3. A sheriff may be called to prove that a recital in his return was made by mistake or inadvertence, but not to vary the return, in absence of fraud or mistake.

4. Either party can use depositions when the interrogatories have been crossed; and it seems that the declarations of a party can be introduced by himself when brought out by the other party in answer to his own interrogatories, and the party bringing them out declines reading them.

5. When a party in failing circumstances conveys property to his son, such conveyance is not fraudulent, nor does it require explanation.

6. The circumstances which the law considers as badges of fraud only, and not fraud *per se*, should be submitted to the jury, so that they may draw their own conclusion as to the character of the transaction.

7. It is only after a fraudulent purpose is shown that the burden of proof is changed, and the purchaser is required to prove that he paid value for his purchase.

8. Until such fraudulent purpose is shown, it is error in the court to instruct the jury that a conveyance by a father in failing circumstances to a son is a badge of fraud.

APPEAL from Orange. Tried below before the Hon. Wm. Chambers.

In 1868, Thomas King owned lots Nos. 4, 5, 6, 8 and 9, in block No. 6, in the town of Orange, and on August 15, he sold and conveyed them to his son, John C. King, the appellant—the deed reciting a consideration of $1000. Upon such sale, the tenant in possession acknowledged John C. King as landlord, who received the rents and profits.

On October 6, 1868, one Gilmer recovered judgment against Thomas King, the citation in the suit having been served on him July 26, 1868. Execution issued October 12, and was returned "not satisfied, because I (the sheriff) can find no property."

January 1, 1869, *alias* execution issued, and a levy was made on the said lots, "the same being pointed out by the plaintiff in this execution as the property of Thomas

King,," as recited in the return of the sheriff. Under this levy, the lots were sold by the sheriff on February 2, 1869, Robert B. Russell being the purchaser at $100. On February 11, 1869, R. B. Russell sold the lots to Robert E. Russell, the appellee—the deed reciting $250 as consideration.

In December, 1869, Robert E. Russell obtained possession of the lots under proceedings in a justice's court.

On April 22, 1872, John C. King, the appellant, brought this action of trespass to try title against Robert E. Russell, the appellee, for the lots.

Russell in answer charged, that the sale by Thomas King to John C. King was fraudulent; that the plaintiff had full knowledge of and participated in the fraud; that the lots were at the time of the levy and sale by the sheriff, in fact, the property of Thomas King, and as such was liable to sale under the execution under which the defendant claimed.

The plaintiff below read the depositions of Hartzell, proving that he wrote the deed from Thomas King to John C. King, in Navarro county, on August 15, 1868; that on that day Thomas King signed and acknowledged the deed before witness, who at the time was a notary public. (The certificate of the notary to the acknowledgment had no seal affixed.)

Jesse S. Holmes, for plaintiff, by depositions testified, that he was sheriff, and made the sale; the levy was pointed out by R. B. Russell, who had control of the judgment against Thomas King; Gilmer, plaintiff in execution, bid off the property at $100, as agent for R. B. Russell, to whom the deed was made; witness received the money for costs; the remainder of the bid was credited on the judgment.

The depositions of B. D. Wood, taken by the defendant, Russell, but which had been crossed by King, were read over objection; he testified, in answer to third in-

terrogatory by defendant, that he had leased the premises of Dr. Anderson, agent for one of the Kings; soon after, witness was informed that the property had been sold to John C. King, and "I supposed I was, and acknowledged myself to be, his tenant;     *     *     *     was dispossessed by Russell. John C. King told me that he had bought the place of his father for a valuable consideration; that it was an absolute and *bona fide* sale, and he had paid part and owed the balance by note. He said that he had bought it on account of his parents being broken down, and in order to help them along as much as possible."

The defendant, after proving the judgment, and purchase, and sheriff's deed, and deed to defendant, proved in substance, by Hugh Ochiltree, that he did not know whether Thomas King was solvent or not; owed witness $100, which witness would like very much to have; knew of the debt upon which the judgment in favor of Gilmer was rendered, it was about $150; did not know of any other debts; before and during the war Thomas King owned several slaves and tracts of land, and these lots; saw the deed on record; heard of it about the time of the Gilmer judgment; the deed from Thomas King to his son was much talked of in the community about the time of the sheriff's sale; witness spoke of the deed to a number of persons; remembers talking to R. B. Russell about it before the sheriff's sale at which he purchased; that witness understood R. B. Russell to have been interested in the Gilmer judgment; witness knew of no property of Thomas King subject to execution.

(After the statement of facts had been signed by the attorneys of the parties, the witness Ochiltree corrected his testimony, and stated that he did not know whether it was before or after the sheriff's sale he had spoken to R. B. Russell about the deed from Thomas King to his son, John C. King.)

Gilmer, the judgment creditor, proved that *he* had pointed out the lots to Holmes, the sheriff, and had the lots sold ; Russell paid witness the purchase money, and witness bid off the lots at Russell's request.

R. B. Russell proved that he owned no interest in the Gilmer judgment ; that he had not pointed out the property to sheriff Holmes, nor caused him to make the levy on the land ; that he was absent from the county at the time of the levy and sale; had never heard of John C. King's claim until after the sheriff's sale; that R. E. Russell had paid witness for the land.

Julia Ann, a colored woman, testified to some conversations of Thomas King about his lots after the sale to John C. King ; that the Kings lived together at the time of the sale, and until separated by family disturbances.

The statement of facts was signed by the attorneys for both parties, but subsequently Russell's attorney withdrew his approval, and to this exceptions were taken—the judge permitting the correction of testimony of the witness Ochiltree, as above stated.

Russell also excepted to the admission of Hartzell's testimony touching the acknowledgment of the deed from Thomas King to John C. King, the notarial seal not having been affixed to the certificate of acknowledgment.

Russell saved exceptions to the answer of Wood to the third interrogatory as hearsay. The substance of the answer is given above, and the witness referred to this answer in answer to other interrogatories.

The instructions complained of are set out in the opinion.

Judgment was rendered for the defendant, Russell, and King appealed.

*Hancock, West & North*, for appellant, insisted upon, as legal propositions governing this branch of the law—

1. The law never presumes fraud; and when a deed is attempted to be set aside for fraud, the burden of proof rests upon the creditor and those holding under him. (Bump on Fraudulent Conveyances, and cases cited, p. 559.)

2. The recital of a consideration in a conveyance is *prima facie* evidence of the fact. (Id., 554, and cases cited.)

3. The mere fact that a conveyance is to a son, or other relation, is not alone sufficient to shift the burden of proof from the creditor to the claimant, and especially so when the conveyance recites a valuable consideration. (Id., 419, and cases cited; see also Shearon v. Henderson, 38 Texas, 245; and Thornton v. Tandy, 39 Texas, 544.)

4. In order to invalidate a transfer for a valuable consideration, the fraudulent intent of the grantor, and notice of and participation in it by the grantee, must be shown. (Bump on Fraudulent Conveyances, 544, and cases cited.)

5. Relationship is not a badge of fraud. (Id., 36, and cases cited.)

Counsel then discussed the facts as applied to these propositions.

*Archer & Moore*, for appellee, cited Bump on Fraudulent Conveyances, 70, 71, 560, 561, 554, 94; 1 Texas, Briscoe v. Bronough; 10 Texas, 393, Mosely v. Gainer; 15 Texas, 188, Edrington v. Rogers; 16 Texas, 34, Wright v. Linn; 19 Texas, 257, Mills v. Howeth; 24 Texas, 548, Green v. Banks; 24 Texas, 622, Stadler v. Wood; 25 Texas Sup., 294, Garrahy v. Bagley & Co.

REEVES, ASSOCIATE JUSTICE.—There was no error in correcting the statement of facts in accordance with the evidence of the witness. The statement had not been approved by the judge, and when he was satisfied that any

part of the evidence had been omitted, it was proper to make the correction, and incorporate into the statement the omitted testimony.

The record failing to show any action of the court upon the exceptions to the petition or the answer, the alleged errors of the court in that respect will not be revised. The error, if any was done either party, is not apparent, and will not be further noticed.

The deposition of the witness Hartzell was admissible as evidence of the execution of the deed from Thomas King to John C. King, by the former, but not for the purpose of validating the notary's certificate, which was shown to be defective for want of his official seal. Had the deposition been admitted for such a purpose, it would have been error, for the reasons assigned by the defendant. The witness Hartzell, who was a notary public for Navarro county, and who took the acknowledgment of Thomas King in the deed of conveyance to J. C. King, but from some cause failed to affix his seal of office, was a competent witness to prove those facts as showing his title from Thomas King, but not to fix notice on the defendant. Under the charge of the court, the jury could not have understood that Hartzell's evidence was received to prove notice to the defendant. The court charged, that the deed was not constructive notice to the defendant or any other person. "But it is not by record only of a deed that a party can have notice of the existence of a claim or title. Possession by the claimant or his agents is equivalent to notice by registration."

Another objection was, the plaintiff was allowed to prove by Holmes, former sheriff of Orange county, that R. B. Russell pointed out the property in controversy for levy under Gilmer's execution against Thomas King, when it appeared from his return on the execution to have been pointed out by the plaintiff, Gilmer.

The sheriff was probably mistaken when he says that

Russell pointed out the lots to be levied on, as it was proved by Gilmer himself that he directed it to be done, and that he purchased the property at the sheriff's sale for R. B. Russell. Russell testifies that he was absent from the county at the time of the levy and sale, and that he gave the sheriff no directions about the levy.

In Ayres v. Duprey, 27 Texas, 599, the court says: "As a general rule, in the absence of fraud or mistake, it certainly cannot be maintained that the official return of the sheriff can be varied or contradicted by his parol testimony."

We think the attention of the sheriff might have been called to his return, and that he was a competent witness to show that it was made by mistake or inadvertence, if such was the fact.

On the trial the plaintiff offered in evidence the deposition of B. D. Wood, which was objected to by the defendant, but the objection was overruled by the court, and the plaintiff was permitted to read the evidence to the jury. The deposition had been taken by the defendant, and crossed by the plaintiff, and on defendants declining to offer it in evidence, the plaintiff was allowed to offer it, and in this there was no error.

Both parties must be considered as having a joint interest in the deposition when cross-interrogatories have been filed and answered, and either party had the right to use the deposition on the trial, and the plaintiff's right could not be defeated because the defendant declined to read it. (Paschal's Digest, Article 3740.)

The third interrogatory, the answer to which was objected to, did not ask for the declarations of John C. King; but the objection is not on the ground that the answer is not responsive to the question. The answer, however, is responsive to other questions which the witness answered by referring to his response to the third question, and so the parties seem to have regarded it on the trial.

No reason is shown for rejecting the evidence of the witness William Smith, by whom it was proposed to prove the alleged transfer of property from Thomas King to Melton, about the time Gilmer brought suit against King ; and in rejecting the evidence it is believed that there was error.

These rulings have been noticed because it may be desired to have the opinion of this court on these questions in another trial, as the cause will have to be reversed for error in the charge to the jury.

The portion of the charge deemed to be erroneous is as follows :

"When a person in failing circumstances and in debt makes a deed to his son, and the deed is attacked on the ground of fraud, with intent to hinder or delay creditors, it is incumbent on the son to prove the payment of the purchase money, and that said purchase was not made for the purpose of defrauding creditors."

The burden of proving fraud was on the defendant, and the fact that the conveyance was made to the son was not of itself sufficient to raise the presumption of fraud. The fraudulent intent of the grantor must first be shown before it is incumbent on the grantee to prove payment of the purchase money.    (Belt v. Raguet, 27 Texas, 479.)

In Baldwin v. Peet (22 Texas, 714), the opinion being delivered by the present Chief Justice, it is held, "that our courts do not possess a power similar to that of courts of equity, of finding one material fact that is not admitted by inference from those that are admitted, and hence that the court had no right to infer that the deed in that case was made with fraudulent intent, from certain badges of fraud established in reference thereto."

In Vanhook v. Walton (28 Texas, 72), it is said : "If fraudulent intent was only to be deduced from facts and circumstances which the law considers as mere badges of fraud, and not fraud *per se*, these should have been sub-

mitted to the jury, so that they might have drawn their own inferences as to the fairness or fraudulent character of the transaction."

The principle enunciated in these cases is, that the circumstances which the law considers as badges of fraud only, and not fraud *per se*, should be submitted to the jury, so that they may draw their own conclusions as to the character of the transaction.

It is only after the fraudulent purpose of the grantor is shown that the burden of proof is changed, and the purchaser is required to prove that he paid value.

It is true that the purchaser must know or have reason to believe that the deed was made to defraud creditors, but if he should accept a deed and should fail to show that he had paid a valuable consideration after the fraudulent purpose of the grantor had been proved, it would be evidence of participation in the fraud.

It is not necessary that the purchaser should have intended fraud in fact, in order to avoid the deed, except in so far as notice that his vendor was committing a fraud would be imputed to him as fraud in law, and make him a *mala fide* purchaser, although he paid value.

The charge referred to is not qualified in other portions of the charges, and the effect of it was to impose on the defendant the burden of proving payment of the purchase money, and that the purchase was not made for the purpose of defrauding creditors, without defining the nature of the attack that must have been made on the deed as the antecedent of such proof, and from which the jury could arrive at a proper conclusion of the fraudulent purpose of Thomas King in making the deed. It was not competent for the court to say that these facts were *prima facie* evidence of fraud.

As the case is presented, there was no error in refusing the instructions asked by the plaintiff. So far as they are applicable to the case, they are embraced in the gen-

eral charge. But because of error in the charge of the court, the cause is reversed and remanded for further proceedings.

REVERSED AND REMANDED.