# THE LAKE ERIE AND WESTERN RAILWAY COMPANY
## v.
## JOHN ZOFFINGER.

1. NEGLIGENCE—INSTRUCTIONS SHOULD BE ACCURATE.—In cases where the evidence shows that the negligence complained of may be attributed to either of two causes, the instructions should be framed so as to meet the case in either of its aspects. So, in actions against a railway company, where the evidence shows the accident may have happened at either of-two places—a street crossing, or on the right-of-way—if one rule of duty prevailed at the street crossing, and another within the exclusive right-of-way of the company, the jury should be so instructed.

2. RIGHT-OF-WAY OF RAILROADS—TRESPASS UPON—CONTRIBUTORY NEGLIGENCE.—The right-of-way of a railroad company is the exclusive property of the company, upon which no unauthorized person has a right to be for any purpose, and it is a serious question whether the company can be charged with negligence in injuring a person found upon its right-of-way, unless such negligence was wanton or willful.

3. CARE REQUIRED OF COMPANY ON ITS RIGHT-OF-WAY.—A railway company is under no obligations to exercise a high degree of care toward the public upon the company's own grounds, even within the corporate limits of a city.

4. NO ARBITRARY RULE CAN BE GIVEN—NEGLIGENCE LEFT TO JURY.—In cases of this character, no specific line of duties to be observed by the railroad company, applicable in all cases, can be laid down, but the principles of law governing the case should be given, and the jury left to determine whether or not the proof sustains the allegations of negligence.

APPEAL from the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding. Opinion filed January 17, 1882.

Mr. B. D. LUCAS and Messrs. WELDON & McNULTA for appellant; that if appellee was injured while on the right-of-way of appellant, he can not recover unless the injury was willfully or wantonly inflicted, cited Ill. Cent. R. R. Co. v. Hetherington, 83 Ill. 510; Ill. Cent. R. R. Co. v. Godfrey, 71 Ill. 500; J. M. & I. R. R. Co. v. Goldsmith, 47 Ind. 43; Gill v. Pa. R. R. Co., 59 Pa. 129; Railroad Co. v. Norton, 12 Harris, 465; Railroad Co. v. Mulherin, 81 Pa. 366.

Appellee must show that his negligence was slight, and that

L. E. & W. R'y Co. v. Zoffinger.

of defendant gross in comparison: C. B. & Q. R. R. Co. v. Avery, 8 Bradwell, 13; Ill. Cent. R. R. Co. v. Hetherington, 83 Ill. 510; C. B. & Q. R. R. Co. v. Harwood, 90 Ill. 425; C. & A. R. R. Co. v. Becker, 76 Ill. 25.

When ordinary care is not exercised, there is gross negligence: C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; C. & N. W. R. R. Co. v. Scates, 90 Ill. 586; Chicago v. Walton, 6 Bradwell, 344; City of Macomb v. Smithers, 6 Bradwell, 474; President, etc., v. Carter, 2 Bradwell, 35; Chicago City R'y Co. v. Lewis, 5 Bradwell, 245.

Special damages, if claimed, must be alleged in the declaration: Chicago v. O'Brennan, 65 Ill. 160; Dickerson v. Boyle, 17 Pick. 79; Sherman v. Dutch, 16 Ill. 283; Chitty's Pl. 398.

Evidence of the plaintiff's pecuniary condition was not admissible under the issues in this case: Chicago v. O'Brennan, 65 Ill. 160; P. Ft. W. & C. R. R. Co. v. Powers, 74 Ill. 341.

The burden was on appellee, not only to show negligence of appellant, but also due care on his part: Kepperly v. Ramsden, 83 Ill. 354; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; Chicago City R'y Co. v. Lewis, 5 Bradwell, 245.

Mr. NEWTON B. REED and Messrs. FIFER & PHILLIPS, for appellee; that running a train backward without having any one to watch the track, or without any light, is gross negligence on the part of the railroad company, cited Ill. Cent. R. R. Co. v. Ebert, 74 Ill. 399; C. & A. R. R. Co. v. Garvey, 58 Ill. 83. C. B. & Q. R. R. Co. v. Triplett, 38 Ill. 482; Ill. Cent. R. R. Co. v. Baches, 55 Ill. 379; C. R. I. & P. R. R. Co. v. Dignan, 56 Ill. 487; I. & St. L. R. R. Co. v. Galbraith 63 Ill. 436.

When, considered as a whole, the jury have been fairly and sufficiently instructed, the court will not reverse for slight or technical error : T. P. & W. R'y Co. v. Ingraham, 58 Ill. 120; Hardy v. Keeler, 56 Ill. 152; Chicago v. Garrison, 52 Ill. 517; Cusick v. Campbell, 68 Ill. 508; Kightlinger v. Egan, 75 Ill. 141; Clark v. Day, 93 Ill. 480.

Nor for a slight error, when the court can see that justice has been done: Hardy v. Keeler, 56 Ill. 152; C. B. & Q. R. R. Co. v. Dickson, 63 Ill. 151; Graves v. Shoefelt, 60 Ill. 462; Daily v. Daily, 64 Ill. 329.

Where a crossing is dangerous, the ringing of the bell is not a sufficient warning to excuse the company; it is bound to use every possible precaution to avoid injury: I. & St. L. R. R. Co. v. Stables, 62 Ill. 313; C. B. & Q. R. R. Co. v. Triplett, 38 Ill. 482; Wabash R. R. Co. v. Henks, 91 Ill. 406; St. L. V. & T. H. R. R. Co. v. Dunn, 78 Ill. 197; T. W. & W. R'y Co. v. O'Connor, 77 Ill. 391.

It is negligence to permit weeds and brush to grow upon the right-of-way, so as to obstruct the view of the track: C. B. & Q. R. R. Co. v. Lee, 87 Ill. 454; I. & St. L. R. R. Co. v. Smith, 78 Ill. 112.

Where two juries have passed upon the facts of a case with like result each time, the verdict will not be disturbed unless clearly against the weight of evidence: Ottawa v. Sweely, 65 Ill. 434, Calvert v. Carpenter, 96 Ill. 63; Nevius v. Gurley, 97 Ill. 365; Wood v. Hildreth, 73 Ill. 525; C. B. & Q. R. R. Co. v. Lee, 87 Ill. 454.

McCULLOCH, J.   On the fifth day of July, 1880, appellee was in the city of Bloomington, having arrived there on the previous night from his home in Minier.   About nine o'clock at night he started for the union depot at the crossing of the Chicago & Alton and the Indiana, Bloomington & Western Railroads, but, losing his way, he got on the track of the latter road and was run over by one of appellant's trains.   The accident resulted in the loss of his right arm and his right leg, for which damage he brought suit and recovered the judgment from which this appeal is taken.

At the intersection of Washington and Howard streets, the track in question is distant from Washington street less than one block.   From Howard street to the union depot, the distance is nearly one thousand feet, with Morris street intervening at a distance of four hundred and sixty-five feet from Howard. Between these two streets the railroad does not follow a public street of the city, but is laid upon the right-of-way of the I. B. & W. Company.   Some of the counts of the declaration lay the scene of the accident *at* the crossing of Howard street and the railroad, but one count lays it *at or near* said crossing.   Im-

mediately after its occurrence, appellee was found in a mangled condition two hundred feet west of the crossing, with no marks of blood, or other evidence of his having been dragged along the ground more than fifteen feet, except that his clothing was torn or cut into ribbons and almost entirely stripped from his body.

Appellee's account is, that when he had gotten as far down Washington street as the intersection of Howard street, he looked south and saw some lights in a large building, facing the latter street, which he took for the depot, and went in that direction until he came to a fence which must have been on the south side of Front street, which is the next street south of Washington. In going there he necessarily crossed the track of the I. B. & W. railroad, but he says he did not notice it to be a railroad, but supposed it to be a bridge. Finding he was mistaken about the depot, he started to go back upon the same street on which he came, which would be Howard street. Having gone a short distance, he heard a bell ahead of him, and a noise behind him like a team running away with a wagon, when almost immediately he was struck by the train, and knew no more until he came to his senses at the Chicago House after his limbs had been amputated.

The train which ran over appellant was running westward. It consisted of seven cars loaded with ice, which were being transferred to the Chicago and Alton Railroad; the engine being on the east end of the train headed eastward, but pushing the train westward. The complaint is that it was running at an improper rate of speed through the city; that no bell was rung or whistle sounded on its approach; that no proper lookout was kept, or signals given, or lights displayed by those in charge.

The evidence is somewhat conflicting, but, upon some of the vital questions, we think it strongly tends to support appellant's theory of the case. Appellee appears to be a German by birth, and has but a limited use of the English language. In the few short sentences of his testimony wherein he attempts to give an account of his exact locality at the time of the happening of the accident, he appears very obscure. He seems

to have become confused in the darkness as to the location of the union depot, and having discovered his mistake, attempted to return on the same street to find it, and from the character of the ground at that place it is evident he must have gone back on the same street at least as far as the railroad track. Then he heard bells right in front of him in the direction of the union depot, and a noise in the rear, which, doubtless, was the noise of the approaching train. These facts would indicate that he was then facing westward instead of northward. Had he been going north, the bell, if at the depot, would have been to his left; if it was on the approaching train, it would have been to his right, and the noise of the train would have been in the same direction. But he says, when he heard the noise, he looked over his left shoulder and was immediately struck. These statements are in harmony with the theory that he had left Howard street, and was walking westward on the track, and had gone in that direction near to the place where he was found, before he was struck by the approaching train.

There is some conflict in the evidence as to whether or not a street lamp was burning at the crossing of Howard street. The evidence inclines us to the opinion that it was burning. Wilson, who was on the train, says it was burning, and as the train approached, the light of the lamp appeared like the headlight of a locomotive coming around a curve. This witness testifies that, at the Howard street crossing, he sat on the top of the rear car, with his legs hanging over the end of it, with a lantern in his hand suspended a little below the top of the car.

The evidence is clear that the train was running at a very moderate rate of speed and that the bell on the engine was ringing. Appellee's principal charge of negligence is the want of a sufficient signal light, so displayed on the train as to apprise any one upon the street crossing of its approach. Several witnesses testify that no light was upon the train, but none of these observed it until it had passed Howard street by at least two hundred feet. Wilson, on the other hand, testifies that he maintained his position, with the lantern in his hand, until he had passed Howard street a few feet, when he went to the

other end of the car to set the brakes for the Chicago and Alton crossing, leaving the lantern on the top of the car at its rear end. There is, therefore, but a slight conflict in the evidence upon this point.

The proof of negligence on the part of appellant is not at all satisfactory, while the evidence tends strongly to show that the accident did not happen at or on the street crossing, but some distance west of it, on the exclusive property of the I. B. & W. Company. If this was the fact, then the measure of appellant's duty toward appellee was quite different from what it would have been had the injury happened at the street crossing, and the instructions of the court to the jury ought to have been so framed as to meet this aspect of the case. In the case of the Chicago and Alton Railroad Company v. Bragonier, decided at the last term, we held that where the evidence showed that the negligence complained of might have been attributed to either one of two classes of employes, but that the company could not be held for the negligent acts of one of them on account of Bragonier's being their fellow servant, the instruction should have been so framed as to meet the case in either of its aspects. So in this case, if one rule of duty prevailed at the street crossing and another within the exclusive right-of-way of the railroad company, the jury should have been so instructed.

The first and second instructions given on behalf of appellee read as follows:

" The court instructs the jury for the plaintiff that even if they believe from the evidence that there was negligence on his part, yet, if the jury further believe from the evidence that the servants of defendant were guilty of negligence, and that when all the evidence in the case is considered, the negligence of the plaintiff, when compared with the negligence of the defendant, was slight, and that the negligence of the defendant, when so compared, was gross, then the jury will find for the plaintiff, if they believe from the evidence that the plaintiff has been injured as charged in the declaration.

" The court instructs the jury for the plaintiff, that it is the duty of a railroad company, in the management of its trains

through a populous city, to exercise a high degree of care and caution to avoid injury to persons. It is the duty to provide the trains with a sufficient number of hands to manage the same, and keep its cars under reasonable control; To provide at night a sufficient light on the front end of its trains to give warning of their approach and to enable the engineer or other person managing and controlling the train to see the track a reasonable distance ahead of the train; and to have some person situated on its trains where he can see the track in front of the same, to give reasonable warning to any one who might be upon or crossing the track, and to use all reasonable diligence to avoid injury."

It is a serious question whether or not under any circumstances, as developed by the evidence, the employes of appellant could be chargeable with negligence in causing the injury complained of, if at the time it happened appellee was on the track west of the crossing, unless such negligence was wanton or willful. The Supreme Court, in I. C. R. R. Co. v. Hetherington, 83 Ill. 510, and I. C. R. R. Co. Godfrey, 71 Ill. 500, lay down the doctrine applicable to such cases in the following language: " The right-of-way was the exclusive property of the company, upon which no unauthorized person had a right to be for any purpose. The plaintiff was traveling upon defendant's right-of-way, not for any purpose of business connected with the railroad, but for his own mere convenience as a footway in reaching his home or on return from a search after his cow. There was nothing to exempt him from the character of a wrong-doer and trespasser in so doing, further than the supposed implied assent of the company, arising from their non-interference with a previous like practice by other individuals. But, because the company did not see fit to enforce its right, and put people off its premises, no right-of-way over its ground was thereby acquired. It was not bound to protect nor to provide safeguards for persons so using its grounds for their own convenience." But it is also held that where the public are permitted to pass over the depot grounds in going from one part of a city to another, " such grounds are made quasi-public by the general use to which they are appropri-

ated," and a person does not become a trespasser by passing over them in a proper manner. I. C. R. R. Co. v. Hammer, 72 Ill. 347.

It is not contended that any such case is made here, and counsel for appellee admit in their argument, that unless the proof shows the injury to have been occasioned by the negligence of appellant's servants at the Howard street crossing, there can be no recovery.

But the first instruction does permit a recovery, if appellee's negligence was slight, and that of defendant was gross, when compared with each other, if appellee was injured as charged in the declaration. This rule would apply if it was an undisputed fact that appellee did receive his injuries at the street crossing. But the proof tends to show a different state of facts. Counsel for appellee seek to break the force of this argument, by saying that the charge in the declaration is that he received his injuries on Howard street, and the jury must have so understood it. As already stated, the declaration does not confine the charge to Howard street alone, but one count alleges the injury to have been done at *or near* the crossing of that street. This instruction was therefore not technically accurate.

But the correct rule of law upon this point having been given to the jury on the part of appellant, we would not be disposed to reverse for this cause alone.

The second instruction, however, attempts to lay down a rule of duty to be observed by all railroad companies in the management of their train, which applies to only one aspect of this case. As already seen, a railroad company is not bound to exercise a high degree of care to provide safeguards for persons trespassing upon its exclusive property. The rule laid down in this instruction applies only to those places in a city where the rights of others are co-existent with those of the railroad company, either as a matter of lawful right or of license from the company. It can have no application whatever to this case, if the accident happened, as is claimed by appellant, some distance west of the street crossing.

It is furthermore contended that this second instruction invades the province of the jury in attempting to lay down a

specific line of duties as being required by law to be observed by appellant's servants, instead of laying down the principles of law governing the case, and then leaving it to the jury to determine whether or not the proof sustains the allegations of negligence. There is a great deal of force in this argument.

The general maxim of law applicable to such cases is *sic utere tuo ut alienum non lædas,* which embraces within its scope every wrongful use of one's own property whereby another may receive damage to his person or property. In its application to the affairs of men it takes in such an infinite variety of circumstances that courts can not undertake to prescribe in advance any line of specific duties which men owe to each other in transacting the affairs of life. They can only decide each case as it arises, and, by means of the verdict of a jury, ascertain whether any duty has been omitted, by which another has sustained injury. But the law takes cognizance only of those omissions of duty which result in injury, and so long as each individual member of society so uses his property as to occasion no injury to others, the law allows him to use his own pleasure in the manner of its enjoyment.

So, in respect to one's own personal safety; the law requires each individual to act as a reasonably prudent man would do under the same circumstances. If reasonable prudence would demand a high degree of care in a particular instance, he is bound to exercise it; but, if only ordinary care is demanded, the law will justify him in the exercise of only that degree. As a general rule, these questions must be solved by the verdict of a jury, whose judgment, if palpably erroneous, is subject to be set aside by the court as in any other case.

Sometimes, however, an act done, or a duty omitted, is so palpably at variance with the dictates of common prudence that the law will pronounce it negligence without further proof. In other cases, the conduct of an individual may or may not be negligent, according to the circumstances with which he is surrounded, and the duty imposed upon him by the law at the time. Hence it is sometimes said that negligence is a question of law, sometimes a question of fact, and sometimes a mixed question of law and fact. 2 Thompson on Negligence 1,235, *et seq.*

Counsel for appellee cite us to numerous decisions of the Supreme Court, wherein the specific duties enumerated in this instruction are supposed to have been held to be required by law. In each of these cases the court was engaged in reviewing the verdict of the jury to see if it was sustained by the evidence. In doing so, they have frequently said that certain acts or omissions amounted to negligence or even gross negligence, and it is reasonably certain that under the same circumstances they would say so again, and their decisions upon these questions ought to be followed by all other courts as safe guides in determining the question of negligence in fact. I. C. R. R. v. Ebert, 74 Ill. 399; C. & A. R. R. v. Garvey, 58 Ill. 83, C. B. & Q. R. R. v. Triplett, 38 Ill. 482; I. C. R. R. v. Baches, 55 Ill. 379; C. & R. I. R. R. v. Dignan, 56 Ill. 487; I. & St. L. R. R. v. Galbraith, 63 Ill. 436.

We apprehend, however, that the Supreme Court never intended to lay it down as a rule of law that these specific duties must be performed under all circumstances; thus, in view of the cases of I. C. R. R. v. Hetherington, *supra*, I. C. R. R. v. Godfrey, *supra*, and I. C. R. R. v. Hammer, *supra*, that court would not hold it to be the duty of appellant at any point between Howard and Morris streets, to hang out a light for the protection of public travel along its track, unless it was shown, by some kind of evidence, that the public had acquired the right or the license to so use the track. Nor would it be likely to pronounce it an act of negligence to omit hanging a light on the rear of a freight car, if the locality was made as light as day by artificial means, nor if the public travel was stopped by gates thrown across the highway during the approach or passage of a train. In the instruction in question, nearly every requirement therein enumerated might be dispensed with, if other adequate means were adopted to warn the public of the approach of trains. It must be determined from the proof in each particular case whether or not the respective parties were in the exercise of that degree of care and caution which the law requires, and generally, that is a question for the jury to decide under all the circumstances proved, enlightened by the instructions of the court as to the degree of care

required.   We are fully confirmed in these views by a recent decision of the Supreme Court, published since the foregoing was written.   The Pennsylvania Co. v. Conlan, 101 Ill. 93.

In the view we take of the case, however, these criticisms are not absolutely called for, but they serve well to strengthen the first objection to the instruction in question.   Its first sentence is sufficient to condemn it, for even within the corporate limits of a city, and within the populous parts thereof, the employes of a railroad company are under no obligations to exercise a high degree of care towards the public, upon the company's own grounds, unless by some means the public have acquired a right to be there.   As before stated, this instruction is not limited to the public street, but embraces as well the private right-of-way of the I. B. & W. Company, over which the evidence wholly fails to show appellee had any right to travel.

The judgment will therefore be reversed and the cause remanded.

Reversed and remanded.