[No. 383.   July 24, 1891.]

PEDRO PEREA, PLAINTIFF IN ERROR, v. THE COL-
ORADO NATIONAL BANK OF TEXAS,
DEFENDANT IN ERROR.

GARNISHMENT—ANSWER—ISSUE—BURDEN OF PROOF—VERDICT.—In a
proceeding by garnishment, by a judgment creditor, under an execu-
tion issued upon the judgment against a debtor of the defendant in
the execution, under section 2159, Compiled Laws, where the gar-
nishee answered that he was not indebted to the defendant, that he
had no property in his possession belonging to defendant, and that
his transactions with him were not fraudulent, the issue was not only
as to the facts of indebtedness and fraud, but also as to the amount of
indebtedness; and a verdict of the jury simply that the answer was
not true was a finding only upon a part of the issue unauthorized by
the statute, and insufficient to support a judgment. Patterson v.
U. S., 2 Wheat. 222.

2. The answer of the garnishee was prima facie evidence of the facts
therein set forth, throwing the burden of proof on the execution
plaintiff; and evidence offered to controvert the answer presented
an issue of fact for the jury. The court therefore erred in directing
the jury to find for the plaintiff.

ERROR, from a judgment for plaintiff, to the Second
Judicial District Court, Bernalillo County.   Judgment
reversed.

CATRON, KNAEBEL & CLANCY for plaintiff in error.

W. B. CHILDERS for defendant in error.

STATEMENT.

The plaintiff in error was, on the eleventh day of June, 1887, summoned as the garnishee of Jesus M. Perea, his brother, under an execution issued out of the district court for Bernalillo county upon a judgment of that court in favor of defendant in error and against said Jesus M. Perea for $4,794.90, rendered on the third day of May, 1887. At the September term, 1887, allegations were filed setting up that the garnishee had received twenty thousand head of sheep from the judgment debtor, and had never paid any sum whatever therefor, but was still indebted for the same; that the sheep were so received for the purpose of hindering, delaying, and preventing the creditors of Jesus M. Perea from collecting their indebtedness; and that the garnishee was indebted to the judgment debtor in a large sum for goods, wares, and merchandise, and in the sum of $34,000 for real estate. With these allegations were filed interrogatories to the garnishee, inquiring fully into the transactions between the garnishee and the said Jesus M. Perea. At the same time the garnishee filed his answer, admitting that he had received the sheep, but denying that he had not paid for them, and denying that he received them for the purpose alleged, and denying that he was indebted to said Jesus M. Perea in any sum. By his answer to the interrogatories he showed that on the twenty-ninth day of January, 1887, Jesus M. Perea sold and transferred to him said sheep and some other personal property, and a considerable amount of real estate, the consideration thereof being the assumption and payment by Pedro Perea of a large number of debts of said Jesus M. Perea, aggregating about

$100,000, a considerable portion of which had at the time of answering been actually paid. The consideration expressed in the written transfers of said property was $60,000 for the personal property and $34,000 for the real estate. Plaintiff filed also a denial of the truth of the answer. The case was tried upon the issue thus formed, and by direction of the court the jury returned a verdict in favor of the plaintiff below, and a judgment was entered against the garnishee for $5,604.70 and costs. The defendant made a motion for a new trial, which was denied. The judge afterward refused to sign a bill of exceptions, on the ground that the time for the presentation of the same had expired, and that he had no power to do so. He subsequently did sign a bill certifying an exception to his refusal to settle the first bill tendered. The bill signed contains the bill which the judge refused to settle and the amendments proposed by counsel for the plaintiff below.

#### OPINION.

LEE, J.—This was a garnishment proceeding under an execution, as provided for by section 2159 of the GARNISHMENT: Compiled Laws of the territory, which answer: issue. reads as follows: "When any execution shall be placed in the hands of any officer for collection he shall call upon the defendant for payment thereof, or to show him sufficient goods, chattels, effects, and lands whereof the same may be satisfied; and if the officer fail to find property sufficient to make the same he shall notify all persons who may be indebted to said defendant not to pay said defendant, but to appear before the court out of which said execution issued, and make true answers on oath concerning his indebtedness, and the like proceedings shall be had as in cases of garnishees summoned in suits originating by attachments." This section, as

well as that pertaining to attachment proceedings, was adopted substantially from the statutes of the state of Missouri by the legislature of the territory, and it is a well recognized principle that thereby the legislature adopted the judicial construction that had been given to it in that state at the time of its adoption. The supreme court of the United States says that this is a received canon of construction fully acquiesced in by that court; that, where English statutes—such, for instance, as the statute of frauds and the statutes of limitations—have been adopted into our own legislation, the known and settled construction of the statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority. McDonald v. Hovey, 110 U. S. 619; Pennock v. Dialogue, 2 Pet. 1. In Alabama it was held that the legislature in that state in adopting the Code must be presumed to have known the judicial construction which had been placed upon the former statutes, and therefore the re-enactment in the Code of the provisions substantially contained in former statutes was a legislative adoption of their known judicial construction. Duramus v. Harrison, 26 Ala. 326. In applying this rule to the statute in question, we must presume that it was adopted by the legislature in view of the judicial construction it had received prior to its adoption by the supreme court of Missouri, and in referring to the rulings of that court upon the statute in question we find, in Van Winkle and Randall v. McKee, it was held "that a deed of assignment void as to creditors did not create the relation of debtor and creditor between the grantor in the assignment and the assignee. The validity of the assignment can not be tried in a court of law upon an issue made between a judgment creditor and the assignee garnished on an execution under the provisions of the act in question." Van Winkle et al. v. McKee, 7 Mo. 435. In Lee et al.

v. Tabor, Garnishee, 8 Mo. 233, it was held: "In a proceeding of garnishment under attachment such an issue could be made and tried,"—but in referring to the case of Van Winkle et al. v. McKee, supra, the court said: "That case arose on construction of the statute giving plaintiff in execution a right to garnishee the debtors of the defendant. The reasoning of the court in that case would certainly apply to this; and, were the phraseology of the statute concerning attachments as circumscribed as that in relation to executions, we would feel no hesitation in pronouncing a like judgment." Under the execution law a garnishment is given against the debtors of the defendant in the execution. The statute concerning attachments gives an original writ against the lands, tenements, goods, moneys, effects, and credits of the debtor, in whosesoever hands they may be, and directs that all persons shall be summoned as garnishees who are named as such in the writ, and such others as the officer shall find in possession of moneys, goods, or effects of the defendant; but no such provisions are made for garnishment under execution. In the case of Wood v. Edgar, 13 Mo. p. 451, the court briefly, yet explicitly, sets forth what this court believes to be the correct construction of the statute. Wood had recovered judgment against Collins & Workman for $1,273, and garnished Edgar. Edgar answered that he held in his hands $1,000, in American gold, deposited by Collins & Workman, to be used by him in compounding with the creditors of Collins & Workman. The court, in passing upon the case, said: "We concur in this case in the construction which the circuit court gave to the sixth section of our act concerning executions. We do not understand that under this section a person having possession of property of the defendant in the execution can be garnished. That section is confined to debtors of the defendant,

and in this respect is more limited in its operation than the corresponding section of the attachment law. No necessity is perceived for giving this statute a more enlarged construction. Gold and silver coin are subject to be seized on execution, like any other property not exempted by law; and the same vigilance which enables the creditor to garnishee the person in whose possession it happens to be found would enable him to levy directly upon the money. So, also, it could be reached by attachment, if the case in other respects authorized one. If the garnishee in this case had been the depositary of a horse or other chattel than the gold coin belonging to the defendant, it could hardly admit an argument that such a depositor was not a debtor of the defendant within the meaning of the act. The principle is not changed by the fact that the property was current gold coin, since an execution reaches that under our law. The only question is, was Edgar, the garnishee, a debtor of Collins, the defendant? He had received from Collins $1,000 in American gold, with directions as to the disposition of it. He was in no sense a debtor to Collins." Nor is a factor having in his possession goods consigned for sale a debtor, within the meaning of the statute. Pratte v. Scott, 19 Mo. 625. In a garnishment under an execution it was held by the court: "In order that an indebtedness may be liable to garnishment, it must be shown to be absolutely due, as a money demand unaffected by liens or prior incumbrance or condition of contract." Scales v. Southern Hotel Co., 37 Mo. 520; Neil v. Tyler, 38 Mo. 545, 43 Mo. 581. The above cases clearly indicate the construction that was given to the estate by the supreme court of that state, and their rulings upon it appear to have been uniform, until the statute itself was changed by legislation on adoption of the Code, in 1855, and, outside of the fact that we may regard them authoritative upon us under

the rule before given, we do not see why the construction they put upon it should not be accepted by us as the correct one. This kind of garnishment is a proceeding relating to process. It is one of the modes pointed out by the statute by which an execution may be executed. It is not a new suit, but an incident or auxiliary of the judgment, and a means of obtaining satisfaction of the same by reaching the defendant's creditors. Tinsley v. Savage, 50 Mo. 141. The statute is in derogation of the common law, and, therefore, to be strictly construed, and its provision can not be extended by construction. Ford v. Dry-Dock Co., 50 Mich. 358, 15 N. W. Rep. 509. The only authority for the proceeding is that directly conferred by statute which in terms provides that if the officer fails to find property to satisfy the execution he shall notify persons indebted to the defendant not to pay said defendant, but to appear in the court out of which the execution was issued and make true answers concerning his indebtedness. The only thing he is to answer to is indebtedness to the execution defendant. The only issue authorized by the statute to be tried is his indebtedness to the execution defendant. And this brings it directly under the general rule that in garnishment proceedings recovery can be had only upon such claims as the principal debtor might himself enforce by action at law in his own name. Patton v. Smith, 7 Ired. 348; Webster v. Steele, 75 Ill. 546; May v. Baker, 15 Ill. 90; Swann v. Summers, 19 W. Va. 115; Hoyt v. Swift, 13 Vt. 133; Brigden v. Gill, 16 Mass. 522; Hassie v. God is With Us, 35 Cal. 385, 386; Freem. Ex'ns, sec. 162; 2 Wade Attachm., sec. 448; Goodde v. Barr, 64 Wis. 662; Adams v. Barrett, 2 N. H. 375; Piper v. Piper, Id. 439.

The record shows that the jury returned the following verdict: "We, the jury, by the direction of the court, find that the answer of the garnishee is not

true, and that the said garnishee has property in his hands belonging to the defendant, Jesus M. Perea, equal to the amount of and sufficient to pay the plaintiff's execution." The verdict does not find the matter of indebtedness—the real question in issue—one way or the other, and is not a verdict upon the issues authorized by statute or made by the pleadings; and in such cases, says the supreme court of the United States: "The rule of law is precise upon this point. A verdict is bad if it varies from the issue in a substantial matter, or if it find only a part of that which is in issue. The reason of the rule is obvious. It results from the nature and the end of the pleadings. Whether the jury find a general or special verdict, it is their duty to decide the very point in issue; and, although the court in which the cause is tried may give form to a general finding, so as to make it harmonize with the issue, yet if it appears to the court or to the appellate court that the finding is different from the issue, or is confined to a part only of the issue, no judgment can be rendered on the verdict." In this case the finding is different from the issue, and, though in the nature of a special finding, does not find the fact authorized by the statute to be tried, and comes directly within the rule thus laid down by the supreme court. Patterson v. U. S., 2 Wheat. 222.

It is contended that, the bill of exceptions not having been signed and settled by the judge, we are to presume the evidence sustains the findings of the court, but there is evidence in the record, without reference to the bill of exceptions, that we must consider,—that is, the answer of the garnishee, which is to be taken as true until denied, and stands as evidence for him until overcome by evidence on the part of the Burden of plaintiff. This proposition is fully sustained by the following authorities: Davis v. Knapp, 9 Mo. 657; McVey v. Lane, Id. 48; Pearless

v. Porter, 12 Mo. 76; Stevens v. Gwathmey, 9 Mo. 636.   In Holton v. So. Pacific Railroad Co., it is held that the answer of a garnishee makes a prima facie case for him, and, whether it be a denial or an affirmation of new matter, it must stand until overthrown by evidence on the part of the plaintiff.   Holton v. So. Pacific Railroad Co., Garnishee, 50 Mo. 151.

Therefore the facts set forth in the answer of the garnishee that he was not indebted to the defendant, that he had no property in his possession belonging to him, and that the property in question had been purchased by him from the defendant, and paid for, long prior to the issuing and service of the notice of garnishee, and that the same was not done for the purpose of defrauding the creditors of the defendant, being prima facie facts in evidence on behalf of the garnishee, it would throw the burden of overcoming this evidence on the part of the plaintiff; and the court, in taking the case from the jury, in order to render the judgment he did, would have to find as a matter of fact that the answer was untrue, and that the transaction was fraudulent; that there was property in the possession of the garnishee belonging to the execution defendant; that it was subject to execution under the law, and that its value was at least the amount of the judgment—each of which would be a controverted question of fact which the court, under the ruling of the supreme court of the United States, is bound to submit to the jury under proper instructions.   Barney v. Schomeider, 19 Wall. 248; Hodges Easton, 106 U. S. 408.

It is also contended by counsel for defendant in error that, while the recourse as a general rule is limited by the extent of the garnishee's liability to the defendant's debtor, this is not true where the garnishee is in possession of the effects of the defendant under a fraudulent transfer from the latter.   That, as a propo-

sition of law, is correct if the garnishment was under
an attachment proceeding, as we have before noticed,
but if we could give the proceeding in this case the full
scope and power of an attachment proceeding, as is
contended for on half of the defendants in error,
and could consider the question of the transfer of the
property of the defendant to the garnishee for the pur-
pose of defrauding, hindering, and delaying the cred-
itors of the defendant, as a proper issue to be tried and
determined under the proceedings in this case, there
would still remain for us to determine the question as
to the power and authority of the court in taking the
case from the jury and directing a verdict, and the
sufficiency of the verdict to authorize the judgment. In
the supreme court of the United States it has been
held: " Where matters alleged to have been fraudu-
lent are being investigated in a court of law it is the
province of the jury to find the facts under the instruc-
tions of the court." Gregg v. Sayre, 8 Pet. 252.
And again the same court says: "It would seem
to be difficult on principle to maintain that the posses- '
sion of goods sold is per se fraud, to be so pronounced
by the court; as that cuts off all explanation of the
transaction which may have been entirely unexcep-
tionable. If circumstances at law may be proven to
rebut the presumption of fraud, the case must be
submitted to the jury." In concluding the opinion,
says Justice McLEAN: " Few questions at law
have given rise to a greater conflict of authority than
the one under consideration. But for many years past
the tendency has been in England and the United
States to consider the question of fraud a fact for the
jury under the instructions of the court, and the weight
of authority seems to be now in this country favorable
to this proposition." Warner v. Norton, 20 How. 448.
And it has thus been held in some of the states that
the jury must be permitted to consider and draw their

own inferences from badges of fraud, and the court should not interfere to formulate conclusions for them. Leasure v. Coburn, 57 Ind. 274; Herkelrath v. Stookey, 63 Ill. 436; King v. Russell, 40 Tex. 133; Waite Fraud. Conv., sec. 226.

When fraudulent intent is not apparent on the face of the deed, it is a question of fact for the jury, and the court has not the power to infer the intent. Thus the question of fraudulent intent is almost uniformly submitted to a jury, and it is regarded as an error for the court to interfere with the province of the jury in this particular. Id., sec. 204. Peck v. Crouse, 46 Barb. 151; Monteith v. Box, 4 Neb. 171; Vance v. Phillips, 6 Hill, 433; Hobbs v. Davis, 50 Ga. 214; Murray v. Burtis, 15 Wend. 214; Syracuse Chilled Plow Co. v. Wing, 85 N. Y. 426; Van Bibber v. Mathis, 52 Tex. 409; Winchester v. Charter, 102 Mass. 272; Penser v. Peticolas, 50 Tex. 638; Wessels v. Beeman & Tann, 66 Mich. 343.

The last case cited is directly in point. The plaintiff sued defendants for alleged unlawful conversion of certain tobacco and unstamped cigars and other property seized on an execution at the suit of a judgment creditor of his vendor, which sale was attacked as fraudulent in fact as to creditors, etc. The bill of exceptions, not being in proper form, was not regarded as a part of the record, or read or considered by the supreme court; but the circuit judge charged the jury as follows: "I think the sales from Aaron Wessels to Wm. E. Wessels must be regarded as void under all the testimony, as I view it. Gentlemen of the jury, I do not think the entry upon the books referred to by counsel for the plaintiff affords the proof, she claims, by showing that the United States government consented to the sale from Aaron Wessels to William Wessels. The sale, as shown by the testimony in the case, is void, and the plaintiffs received no title

thereby. The property either belonged to Aaron Wessels or to the general government, and the plaintiff can not maintain this action. You will, therefore, render a verdict in favor of the defendant and against the plaintiff." The supreme court held this instruction to be error, and says: " Whether the sale from Aaron Wessels to William E. Wessels was fraudulent as to creditors was a question of fact, and should have been submitted to the jury under proper instructions." Counsel for the defendant insisted that the sale was void as a matter of law, because there was no delivery, and the sale was not followed by an actual and continued change of possession, but the court held that delivery and possession appeared, though imperfectly, as a controverted question of fact and should have been submitted to the jury, and that a new trial for that reason must be granted. In that case, as in this, the evidence was not in the record, yet the court held that the question of the sale from Aaron Wessels to William Wessels, although imperfectly, appeared as a controverted question of fact, that should have been submitted to the jury. In this case the same question appears, but not imperfectly. The answer of the garnishee denies the indebtedness and the fraudulent purchase of the property, and avers that the same was purchased from the defendant by him, and fully paid for, before the garnishment proceeding was issued; and this answer has the effect of, and stands as, evidence on his behalf until overcome by evidence on the part of the plaintiff. Therefore, for the purpose of this question, it is immaterial what the testimony of the plaintiff might have been. It would still be a controverted question of fact, even if the testimony on the part of the plaintiff was overwhelming, and showed the answer of the garnishee to be untrue in every particular; it would only be a conflict in evidence, and show that there was a discrep-

ancy in the testimony. The supreme court of the United States in Barney v. Schomeider, 9 Wall. 253, holds: "Where there is any discrepancy, however slight, the court must submit the matter to which it relates to the jury, because it is their province to weigh and balance the testimony, and not the court's."

In endeavoring to apply the statute in question to the proceeding and verdict in this case, it becomes very apparent that the legislature did not design it a remedy to try the right of property under, and to determine the fraudulent transfers of property between the parties. How is the court to determine whether the judgment should go or execution should issue against the garnishee for goods and chattels of the execution defendant claimed in a general charge to be in his possession? In other forms of actions the pleadings make a direct issue as to the specific property in question. In a proceeding in garnishment under an attachment where the right of the garnishee is protected by an indemnity bond, if property is found in his hands, its value has to be assessed before judgment can be given against the garnishee; and that would be a question for the jury, and they would have to make a finding upon it before the liability of the garnishee would incur in this case, where the record contains no description of the property by which it is capable of identification. The court must necessarily be in the dark as to what property the garnishee would be chargeable with; and the findings in this case do not throw any light on the question whatever, but they do show how inadequate the provisions of the statute (to give the construction contended for) would be to protect the rights of parties in proceedings under it. In Bethel v. Linn, 63 Mich. 464, in a proceeding which the legislature unquestionably designed for the trial of issues of that kind the same question arose, and the court, in order to sustain the act, says: "It is the duty of the court to sustain the law and pre-

serve the remedy designed by the legislature, if there
appears to be any way in which these statutes can be
carried out and made effectual, and thinks the diffi-
culty can be avoided by requiring special verdicts to be
returned by the jury, embodying the property in the
garnishee's hands for which they adjudged him liable;
and suggest the following questions to be submitted to
the jury in such cases:  'What property do you find
to have been in possession or under the control of the
defendant at the time of the service of the writ of
garnishment upon him for which, under the evidence
and the law as given by the court, he is liable as gar-
nishee?  What do you find the value of such property
to be under the testimony and the law as given to you
by the court?'''  The facts which the court in the
above case required to be specially found by the jury
in order to give effect to the statute would be equally
applicable in this case.  All the facts which the court
directed the jury to return in the case under consider-
ation might have been true, and yet there might not
have been any liability on the part of the garnishee.
He might have in his possession property belonging to
the defendant, and yet that property might be mort-
gaged to its full value, or it may have come into his
possession by accident, or without his knowledge or
consent.  In either event the fact found would be true,
and yet, as it has often been held under such circum-
stances, no liability would attach to the garnishee.
There may have been evidence from which the jury
could have found indebtedness on the part of the
garnishee to the defendant arising from a fraudulent
transfer of property, but they did not find it, and the
court, independently of the verdict, could not find it.
It was impossible, therefore, that a judgment could be
pronounced for the plaintiff upon the verdict as
directed, and the court could not, consistently with
the constitutional right of a trial by jury, direct the

jury to return a part of the facts, and itself determine the remainder, without a waiver on the part of the defendant of a verdict by a jury. Hodges v. Easton, 106 U. S. 408. As we find error upon the face of the record that requires us to grant a new trial, we do not consider the question as to the bill of exceptions. The cause is reversed and remanded for a new trial.

O'BRIEN, C. J., and SEEDS and McFIE, JJ., concur.